**WO**                                                                                          MH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Isela Encinas-Solano, | No.   CV-23-00227-TUC-SHR |
| Plaintiff, | |
| v. | **ORDER** |
| United States Border Patrol, et al., | |
| Defendants. | |

On May 15, 2023, Plaintiff Maria Isela Encinas-Solano filed a pro se civil rights Complaint,[1] and an Application to Proceed In District Court Without Prepaying Fees or Costs.  In a February 9, 2024 Order, the Court granted the Application to Proceed and dismissed the Complaint because Plaintiff had failed to state a claim.  The Court gave Plaintiff 30 days to file an amended complaint and to thereby cure the deficiencies identified in the Order.  On February 29, 2024, Plaintiff filed a First Amended Complaint (Doc. 9).  On March 5, 2024, she filed a Notice of Appeal.  On April 29, 2024, the Ninth Circuit Court of Appeals dismissed Plaintiff's appeal for lack of jurisdiction.  *Encinas-Solano v. U.S. Customs and Border Prot.*, No. 24-1642 (9th Cir.), Doc. 3.  The Court of Appeals issued its Mandate on June 21, 2024.  (Doc. 13.)

. . . .

---

[1] Although Plaintiff did not identify a federal jurisdictional basis for this case, she is seeking damages from federal officers who purportedly violated her constitutional rights. Accordingly, the Court construed this action as having been filed pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

**I.       Statutory Screening of Prisoner Complaints**

Pursuant to 28 U.S.C. § 1915(e)(2), in a case in which a plaintiff has been granted in forma pauperis status, the Court shall dismiss the case "if the court determines that . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

. . . .

. . . .

If the Court determines a pleading could be cured by the allegation of other facts, a pro se litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000) (en banc).

**II.   Background**

Following her arrest in this District on November 23, 2013, Plaintiff pleaded guilty in *United States v. Encinas-Solano*, CR-14-00839-RB (D.N.M.), to a violation of 21 U.S.C. § 846 ("Unlawfully Knowingly, and Intentionally Combine, Conspire, and Confederate and Agree With One Another (and with Other Persons) To Possess with Intent to Distribute Marijuana"). The United States District Court for the District of New Mexico entered Judgment in that case on July 17, 2014, but the Court's disposition is not evident from the available record. *Id*.

Following her apparent conviction in CR-14-00839-RB, Plaintiff was charged twice in this District with Illegal Reentry, in violation of 8 U.S.C. § 1326(a), (b)(2). Plaintiff was charged once in 2018, *see United States v. Encinas-Solano*, CR-18-00996-TUC-CKJ (LAB), and again in 2023 after she was apprehended near Portal, Arizona, *see United States v. Encinas-Solano*, MJ-23-05813-TUC-MSA, Doc. 1. Both charges were dismissed on the Government's motion. *Encinas-Solano*, CR-18-00996-TUC-CKJ (LAB), Doc. 53; *Encinas-Solano*, MJ-23-05813-TUC-MSA, Doc. 10.

**III.   First Amended Complaint**

In her First Amended Complaint, Plaintiff appears to assert claims for false arrest, threat to safety, excessive force, and a violation of her equal protection and *Miranda* rights. Plaintiff has named as Defendants the United States Border Patrol (USBP) and USBP Agents Arturo Acosta and Manny Robles. She has also sued an unspecified number of unnamed USBP Agents.[2] Plaintiff is seeking $25 million in damages.

Plaintiff alleges the following facts in support of her claims:

After Plaintiff provided valuable information concerning a Mexican cartel to Defendants Acosta and Robles, these agents lied to her and used the information she had

---

[2] These Agents are listed in the caption as "Who[]ever Was Involved."

- 3 -

provided to "put [her] in custody." (Doc. 9 at 3.)³ In 2014, Plaintiff was charged in New Mexico on the basis of information she had provided to Acosta and Robles. These charges were dismissed after Plaintiff "told the Judg[e] the truth." (*Id.*) USBP Agents later "pick[ed] [her] up and g[a]ve [her] a week to provide information" or be deported to Mexico. (*Id.*)

At some point, USBP Agents revealed Plaintiff was an informant to cartel members. As a result of this disclosure, Plaintiff was kidnapped, tortured, and raped. Following her kidnapping, Plaintiff was threatened "all the time," and could not safely remain in Mexico. (*Id.*) When "they" no longer needed Plaintiff, they arrested her for illegal reentry even though she had never been deported. (*Id.*) While she was detained, Immigration and Customs Enforcement (ICE) agents visited Plaintiff and told her she would face a 20-year prison sentence if she did not "sign [her] deportation." (*Id.*) The ICE agents told Plaintiff they had been sent by Defendant Acosta.

In 2018, Plaintiff was arrested by "Arturo Acosta[,] Manny Robles, [illegible] the[ir] co-workers on a false accusation[]." (*Id.* at 4.) In 2023, Acosta pulled Plaintiff over and ordered her out of her vehicle. Plaintiff asked Acosta what was happening, and he replied, "You['re] going to immigration." (*Id.*) When Plaintiff asked "Why?", Acosta told her to "[s]hut the fuck up and get in the patrol car." (*Id.*) Plaintiff refused because her brother, who was with her in the vehicle and who has mental problems, did not understand what was happening. Plaintiff told Acosta she had legal status documents, but he told her they were "expired." (*Id.*) Plaintiff told Acosta she had "just got[ten] them," but he refused to look at her papers. (*Id.*) One of the USBP Agents asked some "illegal people" to "testify against [Plaintiff]" by stating she had transported them but "no one wanted to say that so [the agent] process[ed her] for illegal reentry." (*Id.*) Plaintiff lost her truck and suffered critical damage to ligaments on her neck when Acosta attempted to remove her neck brace. (*Id.*)

---

³ The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

While she was detained, Plaintiff "request[ed] [her] rights" and was told by a USBP Agent, "Shut the fuck up[.] You don't have any right[s]." (*Id.* at 5.) Plaintiff protested, telling the Agent she had human rights, civil rights, and constitutional rights, to which he replied, "You don't have shit." (*Id.*) The Agent then threatened Plaintiff, stating, "If you [illegible] talk one more time I[']m gonna put [illegible] and t[h]row you on groun[d] by your[]self." (*Id.*) He also pointed a gun at her. Plaintiff suffered a seizure because she was "being pressure[d] by them" and had to be hospitalized. In addition, she lost her vehicle. Plaintiff asserts she was never read her *Miranda* rights.

### IV.     Availability of a *Bivens* Remedy

Since the Supreme Court decided a plaintiff could seek damages for a violation of the Fourth Amendment prohibition on illegal searches and seizures in *Bivens*, 403 U.S. at 396–97, it has only recognized *Bivens* claims in two other cases—*Davis v. Passman*, 442 U.S. 228 (1979), and *Carlson v. Green*, 446 U.S. 14 (1980). In *Davis*, the Court held a cause of action existed under *Bivens* for an administrative assistant's claim a Congressman had discriminated against her because of her gender, in violation of the Fifth Amendment's Due Process Clause. *Davis*, 442 U.S. at 230–31. In *Green*, the Court recognized a *Bivens* remedy in a case involving an Eighth Amendment claim against federal prison officials for failing to treat decedent's asthma. *Green*, 446 U.S. at 16–18. "These three cases . . . represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017); *see also Egbert v. Boule*, 596 U.S. 482, 483 (2022) ("Over the past 42 years, however, we have declined 11 times to imply a similar cause of action for other alleged constitutional violations.").

Although the Supreme Court has not "dispense[d] with *Bivens* altogether," it has "emphasized that recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Egbert*, 596 U.S. at 491 (quoting *Ziglar*, 582 U.S. at 135). In *Ziglar*, the Supreme Court set forth a two-part test to determine whether a *Bivens* claim may proceed: a court first must consider whether the claim at issue extends *Bivens* in a new context from

previously established *Bivens* cases; if so, the court must then apply a "special factors analysis" to determine whether there are "special factors counselling hesitation" in expanding *Bivens*. *Ziglar*, 582 U.S. at 136. These two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 569 U.S. at 492. A court may not imply a *Bivens* remedy if there is "*any* rational reason" to think Congress is better suited for the task. *Id.* at 496. If an alternative remedial structure is available, for example, "that alone . . . is reason enough" to refrain from recognizing a new *Bivens* cause of action. *Id.* at 493. A *Bivens* claim will likewise be foreclosed if there is any uncertainty about the potential "'systemwide' consequences" of implying a damages remedy in a particular context. *Id.* at 496 (quoting *Ziglar*, 582 U.S. at 136).

This case features both of the foregoing factors. Here, as in *Egbert*, Defendants were USBP agents "carrying out [that agency]'s mandate to 'interdi[c]t persons attempting to illegally enter or exit the United States or goods being illegally imported into or exported from the United States."[4] *Egbert*, 596 U.S. at 494 (citing 6 U.S.C. § 211(e)(3)(A) (alteration in original)). Such conduct is "intimately related to foreign policy and national security," and is therefore an improper subject for judicial intervention. *Id.* (quoting *Haig v. Agee*, 453 U.S. 280, 292 (1981)); *see also Hernandez v. Mesa*, 589 U.S. 93, 108 (2020) (holding the regulation of border patrol agents at the border "unquestionably has national security implications"). In addition, the same alternative remedy held to foreclose a *Bivens* cause of action in *Egbert* is available to Plaintiff here. Specifically, the USBP's statutory obligation to "control, direc[t], and supervis[e] . . . all employees," 8 U.S.C. § 1103(a)(2), and regulatory duty to investigate alleged violations of its enforcement standards and accept grievances from any person wishing to lodge a complaint, 8 C.F.R. §§ 287.10(a)–(b), provide adequate alternative avenues for relief. *Egbert*, 596 U.S. at 497. The presence

---

[4] Although Plaintiff contends she did not unlawfully enter the United States, the Court cannot conduct its special factors analysis "at such a narrow 'leve[l] of generality.'" *Egbert*, at 496 (quoting *United States v. Stanley*, 483 U.S. 669, 681 (1987)). The proper inquiry is whether a court is competent to authorize a damages action against not just the Defendants in this case, "but against Border Patrol agents generally." *Id.*

of these factors militates against the implication of a damages remedy here. Accordingly, the Court declines to recognize a *Bivens* cause of action, and the First Amended Complaint will be dismissed for failure to state a claim. Because amendment would be futile, the Court, in its discretion, will dismiss the First Amended Complaint without leave to amend. *See, e.g., Oregon Clinic, PC v. Fireman's Fund Ins. Co.*, 75 F.4th 1064, 1074 (9th Cir. 2023) (affirming dismissal without leave to amend where amendment would have been futile).

**IT IS ORDERED:**

(1) The First Amended Complaint (Doc. 9) is **DISMISSED** for failure to state a claim and the Clerk of Court must enter judgment accordingly.

(2) The docket shall reflect that the Court, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), has considered whether an appeal of this decision would be taken in good faith and finds Plaintiff may appeal in forma pauperis.

Dated this 11th day of July, 2024.

Honorable Scott H. Rash
United States District Judge